## Case No. 11,071.

### In re PHELPS et al.

[1 N. B. R. 525 (Quarto, 139);[1] 2 Am. Law T. Rep. Bankr. 25.]

### District Court, D. Kentucky. 1868.

BANKRUPTCY—CHOICE OF ASSIGNEE—FIRM AND INDIVIDUAL CREDITORS—JOINT POWER OF ATTORNEY—MEETING FOR CHOICE OF ASSIGNEE.

1. Creditors who have proved a debt against a partner of a firm in bankruptcy, have no right to participate in the election of the assignee for the company, who must be chosen by the creditors of the company only.

2. The powers given by a letter of attorney to several persons jointly, cannot be exercised by one of the attorneys alone.

3. A meeting to prove debts and choose an assignee, should be organized at the hour designated in the official notice, and should be kept open until an assignee is chosen, or it is ascertained that no choice can be made.

[In the matter of Phelps, Caldwell & Co., bankrupts.]

BALLARD, District Judge. The register certifies for decision by the district judge, the following questions, as having arisen in the course of the proceedings before him, to wit:

First. "Have creditors who have proved debts against one of the bankrupt partners, a right to participate in the electing the as-

[1] [Reprinted from 1 N. B. R. 525 (Quarto, 139) by permission.]

signee?" The register thinks they have. He says, "He sees no reason why creditors of members of a firm should not participate in the electing an assignee for the firm; for such assignee is not only assignee of the firm, but of each member's estate."

I do not agree with the register. The only provision to be found in the whole bankrupt act [of 1867 (14 Stat. 517)] which relates directly to the question propounded is to be found in the 36th section. It is as follows: "That where two or more persons who are partners in trade shall be adjudged bankrupt * * * the joint stock and property of the copartnership and also the separate estate of each of the partners shall be taken * * *; and all the creditors of the company and the separate creditors of each partner shall be allowed to prove their respective debts; and the assignee shall be chosen by the creditors of the company." Whilst the statute is explicit that the separate estate of each bankrupt partner shall pass to the assignee in bankruptcy, it is equally explicit, that it is the creditors of the company only, who shall participate in choosing him. It can hardly be necessary to consider the reason on which a provision so express is founded; but it may not be inappropriate to say that every creditor of a firm is also a creditor of each partner, but that a creditor of one member of a firm is not a creditor of the firm, nor has he any interest in the property of a bankrupt partnership. His interest generally in property which his debtor owns in common with partners, is in the share or part that may be left to his debtor after paying all partnership debts and all claims due the copartners. Of course, when the partnership is insolvent, this share will be nothing. It follows that if a separate creditor of a partner were allowed to participate in choosing an assignee who should have the management of partnership property, he would have a voice in the management of property in which he has no interest whatever; but if the election of the assignee who takes both the firm and separate property of each member, be confined to the firm creditors, no one has a voice who has not an interest in the whole property which passes, though some may be excluded who may have an interest in part.

Second. "When a letter of attorney is given to several persons jointly. can the powers therein given be exercised by one of the attorneys alone?" The register thinks not, and I agree with him. But the register should understand that a letter of attorney in the form prescribed by general orders, form No. 14, or form No. 26 is not a joint authority, and that a power conferred by such a letter may be exercised by any one of the persons to whom it is addressed.

Third. "How long should a meeting advertised for a certain hour. be considered as open for transacting the business for which such meeting is held?" The meeting here referred to, as the context shows, is the meeting contemplated by the 12th and 13th sections of the bankrupt act, and by the warrant, form No. 6, called to choose an assignee. The register thinks that "this meeting should be considered open during the business hours of the day on which the meeting is advertised to be held."

I do not agree with the register. I think the meeting should be organized at the hour designated in the notice, or as soon thereafter as practicable, and should be "kept open" until a choice be made, or it is ascertained that no choice can be made. The terms of the warrant, form No. 6, require that the creditors shall "meet" to choose one or more assignees, not merely on a given day, but at a given hour. Section 12 of the act provides that at this "meeting" "one of the registers of the court shall preside." Section 13 provides "that the creditors shall at the first meeting, held after due notice from the messenger, in presence of a register designated by the court, choose one or more assignees of the estate of the debtor; the choice to be made by the greater part in value and number of the creditors who have proved their debts." Taking the two sections together, it seems to me that the manner of choosing or electing an assignee by the creditors of a bankrupt is not, as the register seems to suppose, similar to that observed in electing civil officers at our state elections. The creditors do not go to the place designated, and at or after the hour fixed in the warrant, separately deposit their ballots or votes in presence of the register; but they actually "meet" and so far organize themselves into a meeting as to have a presiding officer, to wit: the register designated, and when this meeting is organized. at, or after, the hour named in the notice (it cannot be organized before), the creditors in the meeting, if they be the greater part in value and number, proceed to choose an assignee. The manner of proceeding is not prescribed by the statute, and may therefore be determined by the creditors themselves. It should, however, conform to the general practice of meetings; and form No. 15, prescribed by general orders, seems to contemplate that each creditor shall vote, and that his name, residence, and amount of debt shall be recorded. If, on the first vote, no choice be made, by reason of a greater part in number and value failing to concur, a second, third, or any number of ballots, may be had until the required concurrence be obtained. If no such concurrence be had and the meeting adjourn sine die, the contingency happens which authorizes the judge, or, if there be no opposing interest, the register, to appoint one or more assignees.

Whether this meeting. after organizing and failing to make choice of an assignee, can adjourn to another day and then pro-

ceed to choose one, is a question which is not distinctly answered by the statute. Section 12 requires an adjournment when "it appears that the notice to the creditors has not been given as required in the warrant." But, manifestly, this adjournment must have taken place in the case supposed, even if the statute had not required it, because the very foundation of authority in the creditors of a bankrupt to meet and choose an assignee is, that all creditors are notified to meet for such purpose in the manner required by the act. It seems to me, therefore, the requisition that an adjournment shall take place in such a case, does not even inferentially preclude the creditors, who meet in pursuance of a proper notice, from adjourning to another day and then proceeding to choose an assignee. True, section 13 provides "that the creditors shall, at the first meeting * * * choose one or more assignees," and that if no choice is made by the creditors at said meeting, the judge, or, if there be no opposing interest, the register, shall appoint one or more assignees; but I am inclined to the opinion that the meeting of creditors to choose an assignee is the "first meeting" in contemplation of the act, whether it is held on the day designated in the warrant or on a day to which the meeting, assembled on that day, has adjourned, the several adjournments constituting but one meeting and affecting the proceedings in no other way than would a necessary postponement of business from one to another hour of the same day. The term "first meeting" employed in section 13 seems not to mean the actual first assembling of creditors, but to refer to the meeting called to choose an assignee—whether it be held on the day designated in the notice or on a day to which it adjourns, and is used in contradistinction to the terms "second meeting" and "third meeting" employed in general order 25, in forms Nos. 28 and 29 and in sections 27 and 28 of the act, which second and third meetings are called to consider the matter of a dividend. Both the statute (section 11) and the warrant issued in pursuance thereof, form No. 6, contemplate that this "first meeting" of creditors is held for them to "prove their debts" as well as to choose an assignee. This provision is copied almost literally from the Massachusetts insolvency law (see chapter 118, § 18, of the General Statutes), and in that state it seems to be the rule that creditors can prove their debts only at a meeting. 7 Metc. [Mass.] 431–434; 4 Cush. 584; Id. 529; 11 Cush. 375. Of course, if this be the rule under the bankrupt law, an adjournment of the first meeting may be sometimes actually necessary. It is only the creditors who have proved their debts, that can participate in choosing an assignee. The proving of debts must therefore precede the choosing of an assignee. But it may often happen that a bankrupt owes a hundred or more debts, and that it may be impossible, owing to the complicated nature of some, to go through the proofs of one tenth of them, on the day designated in the warrant and notice. If, therefore, in such case, the meeting cannot adjourn to the next, or another, day, to take proof of other debts, it will follow that a power, which the statute contemplates shall be exercised by a greater part in number and value of the whole, is actually exercised by only a few creditors, representing but a small portion of the debts. The plainest principles of justice would seem to require such an adjournment of the meeting, from day to day, as would furnish proper opportunity to all creditors present to prove their debts, and thus qualify themselves to join in selecting an assignee.

It may be that, under the bankrupt law, creditors may prove their debts before the first meeting, and elsewhere than at a meeting; still they are not required to do so, and certainly they should be allowed to do at the meeting what both the statute and warrant, form 6, authorize them to do there, that is, "prove their debts." The necessity for allowing an adjournment of the first meeting, to give opportunity to creditors present to prove their debts under the bankruptcy law, is almost as great as if it required proof of all debts to be made at a meeting. What can or should be done if the creditors persist in adjourning from day to day without choosing an assignee, I need not now say, since it is hardly a practical question. The interest of creditors so obviously requires the prompt choosing of an assignee, that it is not to be supposed the choice will be unreasonably delayed. Should such a contingency arise and be properly made known to the court, some appropriate remedy may doubtless be found.

I am not sure that more has not been said than is necessary to answer the questions propounded by the register, and I am not certain that what I have said in respect to the right of the first meeting "to adjourn." conforms to the interpretation of the statute. My apology for what I have written is that the interrogatory of the register is very comprehensive and seems to refer to the whole manner of conducting the first meeting, and that the conclusion which I have announced seems consonant to reason and to conform to the interpretation put by the supreme court of Massachusetts on a provision in their insolvency law quite similar to that in the bankrupt law which we have been considering. Rice v. Wallace, 7 Metc. [Mass.] 431–434.

I have had little or no opportunity to ascertain what is the actual practice elsewhere in respect to this matter of adjourning the first meeting. If the practice has not yet been established in any of the district courts, it has no doubt been settled both in England and in Massachusetts, and, as our

bankruptcy statute is understood to have been copied in the main from the English bankruptcy and Massachusetts insolvency statutes, I shall willingly conform the practice here to the practice there, if it be ascertained to be different from that which is here indicated as proper.

The clerk will send a copy of this opinion to the register, John H. Ward, Esq.